IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT MURPHY,                                    *

    Plaintiff,                                   *

    v.                                           *

                                                      **CIVIL NO. JKB-21-0814**

UNION CARBIDE CORPORATION, *et al.,*   *

    Defendants.                                  *

    *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM

In 2019, Plaintiff Robert Murphy was diagnosed with mesothelioma, a terminal cancer commonly caused by inhalation of asbestos. After being diagnosed, Plaintiff sued Defendants, claiming that his mesothelioma was caused by his exposure to asbestos at the Key Highway Shipyard where Plaintiff worked in 1973 and 1974. On March 30, 2021, Defendant Hopeman Brothers, Inc. ("Hopeman") removed the case to this Court relying on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Now pending before the Court is Plaintiff's Motion for Remand (ECF No. 49) and Hopeman's Motion for Leave to File a Surreply (ECF No. 70).[1] The Motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Plaintiff's Motion will be granted, Hopeman's Motion will be denied, and the case will be remanded to the Circuit Court for Baltimore City.

### I.    *Background*

On or around August 25, 2020, Plaintiff filed a short form Complaint in the Circuit Court for Baltimore City. (*See* ECF No. 7 at 6.) The short form Complaint cites to the applicable

---

[1] Because the Court determines that this matter should be remanded to the Circuit Court for Baltimore City, it does not address Defendant General Electric Company's Motion to Strike the Third-Party Complaint of MCIC, Inc (ECF No. 61).

paragraphs of a Master Complaint in order to bring claims for strict liability, breach of warranty, negligence, fraud, conspiracy, and market share liability against all Defendants. (*Id.* (citing ECF No. 10).) An attachment to the short form Complaint elaborates that Plaintiff had worked as a "Shipyard worker – helper, electrical equipment" at the "Key Highway Shipyard" from "1973 through 1974" and that he was diagnosed with mesothelioma on October 19, 2019. (ECF No. 7-1 at 1.)

In response to interrogatories, Plaintiff answered that he was exposed to asbestos in various ways while working at the Key Highway Shipyard. (*See* Resp. to Interrogatory No. 91, Mot. Remand Ex. 1, ECF No. 49-1 at 35.) With respect to Hopeman, Plaintiff responded that he "was exposed to asbestos containing dust from Micarta paneling which was cut, manipulated and applied by employees of Hopeman Brothers." (*Id.*) Plaintiff also gave deposition testimony that his work at the Key Highway Shipyard more generally involved working on "[o]il tankers, some passenger ships" but not on "American navy ships . . . none of that." (*See* R. Murphy Dep. at 69, Mot. Remand Ex. 2, ECF No. 49-2.) However, Norman Lang, Plaintiff's supervisor during the time he worked as an apprentice electrician, had a different recollection of the scope of Plaintiff's work. During his March 1, 2021 deposition, Lang recalled that he and Plaintiff had "worked down at Fort McHenry yard on the WESTWIND for the Coast Guard." (N. Lang Dep. at 77, Mot. Remand Ex. 3, ECF No. 49-3.) Lang testified that Plaintiff had spent about "three weeks" working on the Westwind, specifically "working on the anodes on the side of the ship . . . we were working around the shipfitters." (*Id.* at 78.) Based on Plaintiff's testimony regarding his work generally, and Lang's testimony regarding Plaintiff's work specifically on the Westwind, Hopeman removed the case to this Court pursuant to 28 U.S.C. § 1442(a)(1). (*See* Not. Removal at 3–4.) Plaintiff timely moved to remand (ECF No. 49).

2

## II.    *Legal Standard*

Hopeman's notice of removal relies exclusively on 28 U.S.C. § 1442(a)(1), "commonly referred to as the federal officer removal statute." *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 247 (4th Cir. 2021). Section 1442(a)(1) permits removal of "[a] civil action or criminal prosecution that is commenced in a State court and that is against [*inter alia*]: any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Establishing that removal is proper under this statute requires a removing defendant to show "(1) it is a federal officer or a person acting under that officer; (2) a colorable federal defense; and (3) the suit is for an act under color of office, which requires a causal nexus between the charged conduct and asserted official authority." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209–10 (4th Cir. 2016) (internal quotation marks and citation omitted).

Federal officer removal is an exception to the ordinary rule that district courts must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Phillip Morris, Inc.*, 950 F. Supp. 700, 701 (D. Md. 1997). Rather, "the Supreme Court has provided clear instructions that . . . the federal officer removal statute must be 'liberally construed.'" *Express Scripts*, 996 F.3d 243 at 250 (citing *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007)). This liberal construction is intended to "ensure[] a federal forum in *any case* where a federal defendant is entitled to raise a federal defense." *State v. United States*, 7 F. 4th 160, 162 (4th Cir. 2021) (emphasis in original) (citation omitted). Though a removing defendant benefits from a liberal construction of the federal officer removal statute, it still "bear[s] the burden of establishing jurisdiction as the party seeking removal." *Express Scripts*, 966 F.3d at 250 (citation omitted).

3

### III.   *Analysis*

In his Motion to Remand, Plaintiff argues that Hopeman cannot establish the third element required for federal officer removal, i.e., a causal nexus between the charged conduct and asserted official authority. (Mot. Remand at 9.) In opposition, Hopeman frames the issue in terms of prong two, that is whether Hopeman raises a "colorable federal defense" to Plaintiff's claims. (*See* Hopeman Opp'n at 4–8, ECF No. 59.) Although the Court believes that the core factual dispute between the parties is better characterized under the causal nexus prong, it will address whether Hopeman has met its burden of establishing both prongs. Failure to establish any of the statutory prerequisites for removal under § 1442(a)(1) requires remand. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017) (requiring removing defendant to "satisfy each [statutory requirement]").

### A. Colorable Federal Defense

"Courts have imposed few requirements on what qualifies as a colorable federal defense" requiring only "that the defendant raise a claim that is 'defensive' and 'based in federal law.'" *Express Scripts*, 996 F.3d at 254. Hopeman argues that it has raised a colorable government contractor defense with respect to any asbestos exposure Plaintiff suffered while working on the Westwind, a Coast Guard vessel. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). To prevail on such a defense, a defendant must show "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* Plaintiff does not seriously contest that such a defense would be colorable with respect to any asbestos exposure stemming from the Micarta paneling installed by Hopeman on the Westwind. Given that a colorable defense "does not require

4

the defendant to win his case . . . nor even establish that the defense is clearly sustainable," the Court agrees. *Ripley*, 841 F.3d at 210.[2]

### B. Causal Nexus

Plaintiff's Motion for Remand instead focuses on arguing that Hopeman fails to establish a causal nexus between Plaintiff's claims and Hopeman's federal defense because the record shows that Plaintiff was not exposed to asbestos during the time he worked on the Westwind. Although courts still often use the phrase "causal nexus," the standard has shifted to only require a "connection or association between the act in question and the federal office," which is a standard "broader than the old causal nexus test." *Express Scripts*, 996 F.3d at 256 (internal quotation marks and citation omitted). Under the modern test, "the conduct charged in the Complaint need only 'relate to' the asserted official authority." *Mayor and City Council of Balt. v. BP P.L.C.*, 952 F.3d 452, 466 (4th Cir. 2020) (citation omitted), *vacated on other grounds sub nom. BP P.L.C. v. Mayor and City of Balt.*, 141 S. Ct. 1532 (2021). In determining whether there is a relationship between Plaintiff's claim and asserted federal authority, courts "[g]enerally [ ] credit Defendants' theory of the case when determining whether there is such a connection or associations." *Express Scripts*, 996 F.3d at 256.

Hopeman's theory of the case, at least with respect to the pending motion, is that Plaintiff was exposed to asbestos during the three weeks he worked aboard the Westwind. However, the evidence developed in this case—which was set to be tried in state court on July 13, 2021, does not establish that the claims in the Complaint relate to the Coast Guard's directive to use asbestos

---

[2] This Court has previously stated that "the causal nexus requirement is ordinarily satisfied whenever the removing defendant is able to establish a colorable government contractor defense." *Rhodes v. MCIC, Inc.*, 210 F. Supp. 3d 778, 785 (D. Md. 2016). While in this case the Court disaggregates the analysis of those two prongs, Hopeman's failure to establish a connection between Plaintiff's asbestos exposure and the Westwind could also be readily construed as a failure to establish a colorable federal contractor defense to Plaintiff's claims. In short, Hopeman's failure to establish this connection requires remand, and the particular prong to which that failure is attributable is immaterial.

products aboard the Westwind. Even crediting Hopeman's theory of the case, the evidence does not allow it to bear its burden of establishing that removal was proper in this case.

### 1. Lang's Testimony

Hopeman argues that Lang's testimony establishes that Plaintiff was exposed to asbestos aboard the Westwind while (1) working on the heeling tank and (2) while waiting inside the Westwind. Plaintiff's Motion to Remand argues that Lang's testimony does not establish that Plaintiff was exposed to asbestos aboard the Westwind and attaches an affidavit from Lang clarifying various points he made during his deposition. (*See* Lang Aff., Mot. Remand Ex. 4, ECF No. 49-4.) Most critically here, Lang's affidavit avers that "[t]he work that [Plaintiff] and I performed on the WESTWIND at the Fort McHenry yard was on either the anodes or the depth finders on the outside of the ship" and that, during the time Plaintiff worked on the Westwind, "there may have been instances where we were waiting on equipment and chose to do so on the inside of the ship to get out of the weather. However, I do not have a specific recollection that this ever happened." (*Id.* ¶¶ 8–9.) Lang also avers that he does not believe that Plaintiff was exposed to asbestos during the time they worked on the Westwind. (*Id.* ¶¶ 10–11.) As a threshold matter, Hopeman argues that this affidavit must be disregarded in its entirety.

Rather than consider the affidavit, Hopeman argues that the Court should assess the propriety of removal on "the state of the pleadings and the record at the time of the application for removal." (Hopeman Opp'n at 9 (quoting *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013)).) However, as Hopeman itself points out, this rule only prevents "attempts to amend away the basis for federal jurisdiction" and allows "information submitted after removal [ ] in connection with an examination of the jurisdictional facts as they existed at the time of removal." (*Id.* (quoting *Cavallini v. State Farm Mut. Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995)).) Lang's affidavit

6

addresses a jurisdictional fact as it existed at the time of removal—whether Plaintiff was exposed to asbestos while working aboard the Westwind—and is therefore permissibly considered by the Court at this juncture.

Alternatively, Hopeman argues that the Lang affidavit should be disregarded because it contradicts his deposition testimony. Although courts may decline to consider "sham" affidavits, they may only do so where the "inconsistency between a party's deposition testimony and subsequent affidavit [is] clear and unambiguous." *E.E.O.C. v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 441 (D. Md. 2020). Hopeman argues that Lang's affidavit plainly contradicts his testimony on both critical points regarding Plaintiff's work on the Westwind.

First, Hopeman points to testimony by Lang regarding his work on the Westwind's anti-roller or heeling tank. (Hopeman Opp'n at 10.) It pieces together various pieces of testimony that it asserts establishes the following: (1) electricians were involved with the installation of cables related to the heeling tank; (2) installation of these cables required working inside the Westwind; and (3) Plaintiff was one of the electricians involved with installing these cables. (*Id.* at 10–11.) However, reading Lang's testimony in context establishes an explanation wholly consistent with Lang's sworn statement that Plaintiff did not work inside the Westwind.

Lang asserted that the work he did on the Westwind involved "bow work, *and then* we put an anti-roller tank on it." (Lang Dep. at 88 (emphasis added).) He also testified that Plaintiff "quit right around the time we worked on the—when he left there and we finished the WESTWIND." (*Id.* at 100.) While he testified that Plaintiff *would have* assisted with the cable work, he did not testify that Plaintiff did in fact do that work. (*Id.* at 102 (emphasis added) ("Sure, *if he is there*, he would help us").) Thus, Lang's testimony establishes that the work on the Westwind was initially bow work, including work on the anodes and depth finders. (*Id.* at 89 ("Q: Was your work with

7

Mr. Murphy on [the Westwind] confined to the outside area of the vessel like the bow and the anodes on the side?  A: At the time, yeah.  That's what he was working on, on the anodes.").) While there may have been additional work done by electricians inside the Westwind, Lang's testimony leaves open the possibility that Plaintiff quit prior to the installation of the heeling tank aboard the Westwind.  This ready reconciliation of Lang's testimony shows that any differences between it and his affidavit are not "clear and unambiguous."  *Ecology Servs.*, 447 F. Supp. 3d at 441.

Second, Hopeman argues that Lang's affidavit contradicts his testimony regarding the time that Plaintiff spent waiting inside the Westwind.  Here again, the Court finds no clear and unambiguous contradiction.  At his deposition, Lang testified that Plaintiff "would also come inside [the Westwind,] if the weather was bad or whatever, and we couldn't get certain equipment, we would stop the work."  (Lang Dep. at 89.)  His affidavit affirms that "there may have been instances where we were waiting on equipment and chose to do so on the inside of the ship to get out of the weather" though Lang clarifies that he "do[es] not have a specific recollection that this ever happened."  (Lang Aff. ¶ 9.)  It also explains that "[Plaintiff] and I were not exposed to asbestos on those occasions that we may have ventured inside the ship to get out of the weather." (*Id.* ¶ 10.)  Read together, it is clear that Lang assumes that Plaintiff would have waited inside the Westwind under certain conditions but that, more than forty-five years later, he cannot recall a specific time that this occurred.  While Lang's affidavit also supplements his testimony by noting that Plaintiff was not exposed to asbestos while waiting inside the Westwind, nothing in Lang's original testimony suggests that they were so exposed when waiting inside the ship.

8

In sum, Hopeman cannot use Lang's testimony alone, as supplemented by his affidavit, to meet its burden of showing that Plaintiff was exposed to asbestos from products Hopeman used during the time that he worked aboard the Westwind.

### 2. *Plaintiff's Testimony*

While Lang's testimony does not affirmatively establish that Plaintiff was exposed to Hopeman's asbestos-containing products while working aboard the Westwind, Hopeman correctly points out that Lang's affidavit also does not affirmatively disprove this fact. (Hopeman Opp'n at 12 (arguing that Lang is "not qualified to testify as an expert to Plaintiff's 'exposure' to asbestos").) Hopeman further argues that Lang's testimony should be read in the context of Plaintiff's testimony that he "worked with electricians all day usually every day aboard ships including in the wheelhouse, boiler area and hallways." (Hopeman Opp'n at 5 (citing Murphy Dep. at 55–56, 60–61).) This work included time spent near joiners who put up and cut bulkhead panels on the ship walls. (Murphy Dep. at 72, 74, 76–77.) Plaintiff testified that the cutting and installing of panels generated a lot of dust and that he was exposed to this dust. (*Id.* 73–74, 129.) Other testimony establishes that Hopeman did most of the joiner work at the Key Highway Shipyard during the relevant time period. (Hopeman Opp'n at 6.)

Hopeman ties this testimony together with *Plaintiff's* expert opinions, which Hopeman summarizes as showing "that the [asbestos] dust settled on surfaces and was swept by laborers, that the dust traveled extended distances and was reentrained in the air, and that there is no occupational exposure below which injury may not occur." (*Id.* at 6–7.) Considering the evidence adduced in this case, this causal chain is far too attenuated to show that "the conduct charged in the Complaint relate[s] to the asserted official authority." *Mayor and City Council of Balt.*, 952 F.3d at 466 (internal quotation marks and citation omitted).

To summarize, Lang's testimony establishes that Plaintiff may have spent some time inside

the Westwind, but that time was spent waiting, rather than working. (*See* Lang Dep. at 89 (noting

electricians "would also come inside [the Westwind,] if the weather was bad or whatever" but that

when they did so "we would stop the work"). Hopeman then transposes Plaintiff's testimony to

suggest that this time was spent near Hopeman joiners. (Hopeman Opp'n at 5.) However, there

is no evidence that suggests that Plaintiff's experience with Hopeman joiners while *working* at the

Key Highway Yard is analogous to his experience while *not working* at the Fort McHenry Yard.[3]

(*See* Resp. to Interrogatory No. 91; *see also* Reply at 2 ("[T]here is no evidence, proffered or

otherwise, that vessel bulkhead panels were being installed, removed or handled at any time while

Mr. Murphy was working on board the Coast Guard ship."), ECF No. 69.) Hopeman also cannot

bridge this gap by adopting the views of Plaintiff's experts (views it is unlikely to share in

determining the merits of Plaintiff's claims), as Plaintiff's theory of the case "does not allege any

exposure to asbestos-containing products while working on the bow of the United States Coast

Guard Cutter WESTWIND." (Mot. Remand at 9.) Rather, Plaintiff "categorically denies any

exposure to asbestos-containing products while working on Navy ships." (*Id.*)

At times, courts do allow inchoate theories of asbestos exposure to serve as the basis for

removal where "the course of discovery may [fully] flesh out" the relationship between the defense

and Plaintiff's case. *See Rhodes v. MCIC, Inc.*, 210 F. Supp. 3d 778, 785 (D. Md. 2016) (denying

motion to remand despite lack of specific causal nexus "[g]iven the dearth of specific allegations

---

[3] Hopeman sought leave to file a surreply where it argued that the term "Key Highway" was both a specific yard and
a general term for the three shipyards in the area (Key Highway Yard, Fort McHenry Yard, and Fairfield). (*See*
Proposed Surreply, ECF No. 70-1.) Plaintiff opposes the surreply and the Court will deny leave because the "surreply
would not alter the Court's analysis." *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D.
Md. 2013). While it appears that Lang may have used the term "Key Highway" as a catchall, there is no similar
evidence that Plaintiff used the term as broadly or that he did so in responding to the interrogatories in this case.
Accordingly, acknowledging Lang's use of the term does not affect the Court's analysis regarding Plaintiff's use of
the same term.

in Plaintiffs' complaint regarding any specific products of any particular Defendant"). This is not that sort of case. Hopeman has had months in state court to develop detailed written and testimonial discovery regarding the nature and scope of Plaintiff's claims and are still unable to make a concrete connection between Plaintiff's time working on the Westwind and any asbestos exposure—much less exposure based on the work of Hopeman joiners. Indeed, it appears that Hopeman's theory of the case at the time of Lang's deposition was to categorically deny that Plaintiff worked around Hopeman joiners *at all*. (*See* Lang Dep. at 124–26.) Hopeman's inability to crystallize the connection between Plaintiff's work on the Westwind and any allegation of asbestos exposure fails to satisfy its burden of establishing a causal nexus between the work Hopeman performed under color of federal office and Plaintiff's allegations.

The federal officer removal statute reflects a policy of "providing a federal forum for a federal defense." *Sawyer*, 860 F.3d at 254. While federal courts should not "frustrate [that policy] by a narrow, grudging interpretation of § 1442(a)(1)," *State*, 7 F. 4th at 162, neither should they allow non-existent federal tails to wag jurisdictional dogs. Plaintiff worked as an electrician at Key Highway Yard for nearly ten months. For three weeks of that time, he *may* have spent time waiting (not working) inside of a Coast Guard vessel. Plaintiff and Hopeman agree that, for the remaining time, Plaintiff's exposure to asbestos would not be subject to a federal contractor defense. Thus, even granting Hopeman's view, a federal contractor defense in this case would shield only a sliver of the conduct in this case, hardly the sort of aegis that "protect[s] the Federal Government from interference with its operations." *Sawyer*, 860 F.3d at 254.

But to be clear, the evidence in this case does not even provide this thin reed to justify the exercise of federal jurisdiction. Rather, that evidence provides no link between Plaintiff's time working on the Westwind and his claimed asbestos exposure. Without this link, Hopeman cannot

11

meet its burden of establishing that "the charged conduct was carried out for or in relation to the asserted official authority," and this case must be remanded. *Id.*

## IV.   *Conclusion*

For the reasons set forth in the foregoing Memorandum, Plaintiff's Motion for Remand (ECF No. 49), will be GRANTED and Hopeman's Motion for Leave to File a Surreply (ECF No. 70) will be DENIED.

DATED this _____ day of September, 2021.

BY THE COURT:

James K. Bredar
Chief Judge

12